UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

| | |
|---|---|
| KENNETH DECTER and ANDREW DECTER, a minor over the age of 14 by his father, KENNETH DECTER | Civil Action No. |
| Plaintiffs, | |
| -against- | **COMPLAINT** |
| SECOND NATURE THERAPEUTIC PROGRAM, LLC, RIGHT DIRECTION CRISIS INTERVENTION, SKEZICS CORP aka SKEZICS CORPORATION D/B/A RIGHT DIRECTION CRISIS INTERVENTION and BRIAN T. SHEPHERD, | JURY TRIAL DEMANDED |
| Defendants. | |

---------------------------------------------------------------X

Plaintiffs, by their attorneys, Kilgannon & Kilgannon, LLP as and for their Complaint against the defendants, allege as follows:

## JURISDICTION AND VENUE

1. The Court's jurisdiction is based upon 28 U.S.C. §1332 (Diversity of Citizenship) because the residence and/or principal place of business of parties of the plaintiffs is different than the residence and/or principal place of business of the defendants.

2. Venue is appropriate under 28 U.S.C. §1391(b)(2), (Substantial part of the events and contacts), as a substantial part of the acts giving rise to the claims alleged herein occurred within this judicial district.

3. The amount in controversy is in excess of $75,000.00.

## PARTIES

4.     Kenneth Decter is an individual residing at 47 Beechwood Avenue, Port Washington, New York 11050. ("Kenneth")

5.     Andrew Decter is an individual residing at 47 Beechwood Avenue, Port Washington, New York 11050. ("Andrew")

6.     Second Nature Wilderness Program ("Second Nature") is a Limited Liability Company formed in the State of Utah with its principal offices located Salt Lake City, Utah.

7.     Right Direction Crisis Intervention ("Right Direction") is a corporation and/or company with its principal offices located in Salt Lake City, Utah.

8.     Skezics Corp. aka Skezics Corporation D/B/A Right Direction Crisis Intervention ("Skezics") is a corporation formed in the State of Utah with its principal offices in Salt Lake City, Utah.

9.     Brian T. Shepherd ("Shepherd") is an individual residing in the State of Utah.

## FACTS

The Plaintiffs

10.     Kenneth is the father of Andrew, a minor.

11.     Andrew's date of birth is November 7, 1995 (Age 16 at time of occurrence of events herein).

12.     Kenneth and Andrew's mother were divorced by the New York State Supreme Court Nassau County under Index No. 201418/02 by Supreme Court Order dated September 18, 2002 and entered September 20, 2002 with the Nassau County Clerk in New York State. ("Supreme Court Order")

13.     At the time of this occurrence, June 20, 2012, Andrew was living with his mother in Manhasset, New York.

14.     At all relevant times herein, Andrew was in the summer between his junior and senior year in Manhasset High School, an active member of the Plandome junior fire department, a tuba player on Manhasset's award winning marching band and a technical director of the theater program at his high school.  Andrew is currently a firefighter with the Manhasset Lakeville Fire Department.  Andrew intends to join the military after high school.  Andrew has no criminal record and no history of disciplinary problems in school.  Andrew has never had a problem with drugs or alcohol

The Kidnapping

15.     In the early morning of June 20, 2012 at approximately 5:00AM the infant plaintiff, Andrew, was woken up in his room by three large men.  Two men were standing over his bed and one man was blocking the door which exits Andrew's bedroom.  The men were displaying handcuffs to Andrew.

16.     The grown men were employees and/or agents of the defendants and were working in furtherance of defendants' employ.

17.     A struggle ensued as the infant plaintiff Andrew tried desperately to escape.  The employees, servants and/or agents of the defendants told Andrew his attempts to leave would be fruitless.  The employees, servants and/or agents of the defendants told Andrew they were taking him into custody and taking him out of his home in New York and to the airport so they could transport him to Utah.

18.     The defendants told Andrew that they would stop any attempt by him to escape.

19.     Andrew was terrified and feared for his life.

20.     Andrew begged the defendants to let him talk to his father, Kenneth Decter.  The defendants refused.

21.     Andrew also begged to speak with his attorney and friend.  The defendants refused.

22.     Andrew briefly attempted to flee, but to no avail.


Transport of Infant Andrew Across State Lines

23.     Andrew was transported by the defendants in what seemed to be an unmarked police car.  Andrew was placed in the back with one of the men who was and/or is an employee and/or agent of the defendants sitting alongside of him to prevent his escape.  The door to this transport vehicle was fixed so that it could not be opened from the inside of the backseat where the infant Andrew was seated.

24.     The defendants threatened Andrew not to attempt to escape.

25.     Andrew was escorted by the defendants through the airport but he did not go through the "normal" security channels.

26.     During various times of the kidnapping of Andrew, the defendants displayed their handcuffs to Andrew and repeatedly threatened Andrew that it would not be worth it for him to try to escape.  After the earlier attempt to flee, Andrew knew his attempts to flee would be fruitless.

27.     Andrew was transported like a prisoner by the Defendants to the defendants' camp in Utah.

4

Detainment in Utah Wilderness

28.     Andrew was transported to defendant, Second Nature's camp in the wilderness in Utah.

29.     When Andrew arrived in Utah, he was put in what can only be described as prisoner type clothing – an orange jumpsuit.

30.     Andrew was forced into a wilderness camp in the middle of the woods.  He was taken there by the defendants against his will.  He continually asked to speak with his father, Kenneth.

31.     Each night Andrew's sneakers/boots were taken from him so as to prevent his escape.

32.     During his imprisonment in the wilderness, Andrew was forced to backpack numerous miles each day through grueling terrain.  He was only fed freeze dried food.  In the month Andrew was held captive, he lost nearly 25lbs.

33.     Andrew was forced to wear the same clothing for nearly a month.  He could not take off the prison uniform he was given because of the mosquitoes in the forest.

34.     When Andrew requested to take a shower he was given a bag of water to rinse himself.

35.     Andrew was unlawfully detained in the wilderness and his freedom was stolen by the defendants from June 20, 2012 until July 17, 2012.

36.     Andrew repeatedly asked to speak to his father Kenneth and/or to his attorney.

37.     Andrew's requests were completely ignored and/or denied by the defendants, until the morning of July 17, 2012 when the frightened sixteen year old was first allowed to speak with his father Kenneth on the phone.

Kenneth's Fight to Get Andrew Back

38.     Kenneth and Andrew have a strong and loving relationship.

39.     They generally spoke on the phone at least once a day prior to the aforesaid occurrence.

40.     Kenneth and Andrew also regularly spent at least two days a week with each other.

41.     Under the Supreme Court Order of the Nassau County Supreme Court, Kenneth was mandated daily telephone communication with Andrew and weekly visitation on Wednesday and a weekend day.  Kenneth and Andrew very rarely missed this Supreme Court Ordered visitation time.

42.     Kenneth was alarmed when he did not hear from Andrew on June 20, 2012.

43.     Kenneth called Andrew a number of times on June 21, 2012 but did not hear back from him.  Kenneth found out that day that Andrew had been abducted.

44.     After learning of Andrew's kidnapping, Kenneth repeatedly called Second Nature's telephone number and demanded to learn where his infant son Andrew was being held. The employee at Second Nature would only state that Second Nature could neither "confirm nor deny" that they were holding the infant child Andrew.  The fact is they were holding Andrew in an undisclosed location in the wilderness in Utah against Kenneth and Andrew's will in a prison uniform and preventing Andrew's escape.

45.     Kenneth and Andrew's attorney also made several attempts to speak with the infant plaintiff and to obtain updates as to the infant-plaintiff's health and well-being. The Defendants at Second Nature refused his requests, despite their knowledge of the Supreme Court Order mandating such communication.

46.     The Defendants were aware of Kenneth's right to speak with and see the child.

47.     Kenneth as well the attorney of Andrew and Kenneth were stonewalled at every attempt to speak with Andrew.

48.     Kenneth was forced to file a Petition in New York State Court for a Writ of Habeas Corpus in order to have contact with his infant son Andrew.

49.     After much pressure from Kenneth, the Decter's friend/attorney and their later hired attorney, the defendants allowed Kenneth to speak with a "therapist" who would tell Kenneth that Andrew was fine.

50.     Kenneth was only allowed to speak to Andrew once the morning Andrew was released from his unlawful imprisonment.

51.     In order to get Andrew returned home, Kenneth was forced to reach out to his attorneys to file extensive motions with the New York State Supreme Court Nassau County, including a Petition for a Writ of Habeas Corpus to get Andrew returned. His attorneys' fees mounted because of the defendants refusal to abide by the Supreme Court Order and New York State Supreme Court Order.

52.     The New York State Supreme Court eventually granted Kenneth's request and signed the Writ of Habeas Corpus requiring the defendants to release Andrew and send him back to New York.

Andrew's Unescorted Journey Home

53.     Andrew was released by the defendants and driven to the airport by the defendants on July 17, 2012.

54.     Andrew was given his plane ticket and dropped off at the airport by the defendants.

55.     The defendants dropped this 16 year old minor off at the airport with no instruction or direction on where to go.

56.     Andrew took the plane home to New York on July 17, 2012.  This time, however, he was not escorted or taken by force.


## AS AND FOR A FIRST CAUSE OF ACTION

*New York Common Law False and Illegal Imprisonment*

57.     Plaintiff repeats and realleges each and every allegation hereinbefore stated as if fully set forth herein.

58.     Andrew was held against his will from June 20, 2012 until July 17, 2012.

59.     The defendants purposefully and repeatedly took steps to ensure that Andrew would not be able to escape.

60.     Andrew repeatedly requested for his release, his requests were denied by the defendants.

61. Andrew repeatedly requested to speak to his father and his attorney, his requests were denied by the defendants except for the phone call on July 17, 2012, the morning he was released.

62. Andrew and his father, Kenneth, never agreed or consented to the confinement of Andrew by the defendants.

63. The defendants had no legal basis to confine Andrew for nearly one month.

64. The defendants knowingly, intentionally and/or negligently participated in violating New York State Supreme Court Order, specifically the Supreme Court Order.

65. As a result of the foregoing, Andrew's health was and continues to be impaired, Andrew suffered loss of freedom and deprivation of liberty without legal justification, Andrew missed his opportunity to take driver's education which delayed his ability to obtain a driver's license, he suffered damage to his reputation, Kenneth was caused financial hardship in the form of substantial legal fees and other costs and Andrew continues to suffer severe mental stress, including, but not limited to, anxiousness, nervousness, anxiety, depression, insomnia and fear of abduction.

66. As a result, the Plaintiffs, Kenneth and Andrew, are entitled to relief.


**AS AND FOR A SECOND CAUSE OF ACTION**

*New York Common Law Assault*

67. Plaintiff repeats and reallges each and every allegation hereinbefore stated as if fully set forth herein.

68. After Andrew attempted to escape but was forcefully wrestled and restrained by the employees and/or agents of the defendants on the morning of June 20, 2012, the defendants'

displayed handcuffs to Andrew as they removed him from his bedroom in Manhasset, New York.

69.     During the car ride to the airport and while walking to the airport, the employees and/or agents of the defendants instructed the infant-plaintiff, Andrew, that he should not make any attempt to escape.

70.     As the defendants escorted the infant-plaintiff Andrew, they stayed very close to him so as to prevent him from attempting to flee.

71.     The actions of the defendants were willful, intentional, unwarranted and unjustified and without any just cause or provocation.

72.     As a result of the actions of the defendants' actions the infant plaintiff Andrew suffered from severe emotional distress in that he was, amongst other things, anxious, nervous, scared, worried, apprehensive and/or restless for the time he was abducted and held by the defendants.

73.     As a result of the actions of the defendants' actions the infant plaintiff Andrew continues to suffer from severe emotional distress in that he is, amongst other things, anxious, nervous, scared, worried, apprehensive and/or restless because of the fear of being abducted again.

74.     As a result, Andrew is entitled to relief.


## AS AND FOR A THIRD CAUSE OF ACTION

*New York Common Law Intentional Infliction of Emotional Distress*

75.      Plaintiff repeats and realleges each and every allegation hereinbefore stated as if fully set forth herein.

76.     The defendants acted illegally, intentionally and/or recklessly in abducting, kidnapping, imprisoning and transporting the infant plaintiff Andrew across state lines and against his will.

77.     The defendants acted illegally, intentionally and/or recklessly in, amongst other actions, abducting, kidnapping, transporting and imprisoning the infant-plaintiff Andrew, in abducting and transporting Andrew across state lines, in refusing to allow the infant-plaintiff Andrew to speak with his father Kenneth, in refusing to allow Andrew to speak with his friend/attorney and in forcing the infant plaintiff Andrew into the unknown wilderness against his will.

78.     The defendants acted illegally, intentionally and/or recklessly in refusing to allow Kenneth to speak with his infant son Andrew, in initially refusing to inform Kenneth as to the health of his infant son Andrew, in initially refusing to inform Kenneth as to the whereabouts of his infant son Andrew and in failing to follow a New York State Supreme Court Order, to wit: the Supreme Court Order which allows Kenneth daily communication and weekly visitation with Andrew.

79.     As a result of the actions of the defendants' actions the infant plaintiff Andrew suffered from severe emotional distress in that he was, amongst other things, anxious, nervous, scared, worried, apprehensive and/or restless for the time he was abducted and held by the defendants.

80.     As a result of the actions of the defendants' actions the infant plaintiff Andrew continues to suffer from severe emotional distress in that he is, amongst other things, anxious, nervous, scared, worried, apprehensive and/or restless because of the fear of being abducted again.

81.     As a result of the actions of the defendants, the plaintiff, Kenneth, was caused to suffer substantial financial and severe emotional distress because of the actions of the defendants including, amongst other things, kidnapping his infant son, transporting his infant son across state lines into Utah, refusing to allow Kenneth to speak with his infant son, in refusing to keep Kenneth informed as to the whereabouts of his infant son.   Kenneth suffered from severe emotional distress in that he was, amongst other things, anxious, nervous, scared, worried, apprehensive and/or restless for the time his infant son was abducted and held by the defendants.

82.     As a result of the actions of the defendants, Kenneth continues to suffer from severe emotional distress in that he is, amongst other things, anxious, nervous, scared, worried, apprehensive and/or restless because of the fear of his son being abducted again

83.     As a result of the actions of the defendants the plaintiff Kenneth also suffered financial hardship in that he was caused to incur substantial legal fees to force the return of his infant son Andrew.

84.     The illegal intentional and/or reckless acts of the defendants have caused Kenneth and Andrew Decter extreme and severe emotional distress.

85.     As a result, the plaintiffs, Kenneth and Andrew, are entitled to relief.

### AS AND FOR A FOURTH CAUSE OF ACTION

*New York Common Law Tortious Interference with Parental and Visitation Rights*

86.     Plaintiff repeats and realleges each and every allegation hereinbefore stated as if fully set forth herein.

87. The defendants snatched, abducted, kidnapped, imprisoned and transferred infant Andrew across state lines without the notification to or consent of his father Kenneth.

88. As part of their website, the defendants, Second Nature, provide that where the parents of a child are divorced, the consent of both parents is required.

89. On or before July 5, 2012, defendants were contacted and made aware of the Supreme Court Order and the right of Mr. Decter to speak to his son daily and see his son Andrew weekly therein.

90. Even after notification of Kenneth Decter's parental rights, the defendants continued to refuse to allow Kenneth daily communication with his infant son Andrew and refused to return Andrew to New York so that Kenneth may exercise is judicially mandated visitation rights.

91. In order to have Andrew returned Kenneth was required to commence legal proceedings in the New York State Supreme Court Nassau County, under Index No. 201418/02. Kenneth was forced to pay legal fees as a result of defendant's tortious interference with Kenneth's parental rights.

92. As a result, Kenneth was deprived of his right to speak to and/or see his son for a lengthy period of time. Along with the unjustified withholding of Kenneth's right to see and/or speak to Andrew, Kenneth lost the love and affection of his son because their communication and visitation was being illegally refused by the defendants.

93. As a result, the plaintiff, Kenneth, is entitled to relief.

## AS AND FOR A FIFTH CAUSE OF ACTION

*New York Common Law Alienation of Affections*

94.     Plaintiff repeats and realleges each and every allegation hereinbefore stated as if fully set forth herein.

95.     The defendants wrongfully, illegally and violently abducted, snatched, kidnapped, imprisoned and transported Andrew across state lines.

96.     Andrew was taken and retained from his father Kenneth from June 20, 2012 until July 17, 2012.

97.     The defendants' actions caused Kenneth to lose Andrew's love, affection and companionship for practically a month.

98.     The defendants' actions caused Andrew to lose Kenneth's love, affection and companionship for practically a month.

99.     As a result, the Plaintiffs, Kenneth and Andrew, are entitled to relief.


## AS AND FOR A SIXTH CAUSE OF ACTION

*New York Common Law Abduction of Child*

100.     Plaintiff repeats and realleges each and every allegation hereinbefore stated as if fully set forth herein.

101.     At all times hereinafter mentioned, the plaintiff, Kenneth, was and still is the father of the infant-plaintiff, Andrew Decter, and, as such, was entitled to the custory and service of the infant-plaintiff, Andrew.

102.     On June 20, 2012 and for sometime therebefore, the infant-plaintiff Andrew, was and has been residing in Manhasset, New York.

103.    On June 20, 2012, at his mother's house in Manhasset, New York, the defendants by means of trickery, deceit and/or force, violently seized the infant-plaintiff and forcibly stole, kidnapped or carried the said minor away.

104.    The unlawful seizure and removal of the infant-plaintiff, Andrew, was wholly without authority of his father, Kenneth, was done negligently, wantonly and/or maliciously for the purposes of injuring the plaintiff father of the infant-plaintiff and depriving the plaintiff-father of the custody and services of the infant-plaintiff.

105.    By reason of the negligent, willfull, malicious and wrongful acts of the defendant as hereinbefore alleged, the plaintiff was deprived of the custody and services of the infant-plaintiff.

106.    In order to have Andrew returned Kenneth was required to commence legal proceedings in the New York State Supreme Court Nassau County, under Index No. 201418/02. Kenneth was forced to pay legal fees as a result of defendant's tortious interference with Kenneth's parental rights.

107.    As a result, Kenneth was deprived of his right to speak to and/or see his son for a lengthy period of time.  Along with the unjustified withholding of Kenneth's right to see and/or speak to Andrew, Kenneth lost the love and affection of his son because their communication and visitation was being illegally refused by the defendants.

108.    As a result, the Plaintiff, Kenneth, is entitled to relief.

## AS AND FOR A SEVENTH CAUSE OF ACTION

*Conspiracy*

109.     Plaintiff repeats and realleges each and every allegation hereinbefore stated as if fully set forth herein.

110.     Each of the defendants understood, comprehended and agreed to abduct the infant-plaintiff from his home in New York, kidnap and/or transport him across state lines to the State of Utah and detain the infant-plaintiff in the wilderness in Utah without communication to his father, Kenneth.

111.     The defendants each knew their subject of their participation in the acts alleged hereinbefore.  The defendants worked in conjunction with each other to facilitate the timing, detaining, transport and imprisonment of the infant-plaintiff.

112.     In working together to facilitate and execute the abduction and detainment of the infant-plaintiff, Andrew, each of the defendants were involved in the false/unlawful imprisonment of Andrew, the Assault of Andrew, the intentional infliction of emotional distress upon Kenneth and Andrew, the interference of Kenneth's parental visitation and communication, the alienation of affections of both Andrew and Kenneth and the abduction of a child.

113.     As a result, the defendants herein are all liable for the actions of each other.

114.     As a result, the plaintiffs, Kenneth and Andrew are entitled to relief.


## AS AND FOR A EIGHTH CAUSE OF ACTION

*Pierce of Corporate Veil*

115.     Plaintiff repeats and realleges each and every allegation hereinbefore stated as if fully set forth herein.

116. Brian T. Shepherd is the director of Skezics and/or Right Direction.

117. Upon information and belief, Shepherd has been the director of Skezics and/or Right Direction since 2006.

118. Upon information and belief, Shepherd, Skezics and Right Direction have been in the business of abducting, kidnapping and/or detaining children and/or adolescents against their will and without proper investigation as to the behavior and/or mental state of the child.

119. The abduction, kidnapping and detainment of the children occurs without legal justification, consent and/or due process of law.

120. This abduction, kidnapping and detainment has been an ongoing practice of Shepherd, Skezics and Right Direction.

121. In abducting, kidnapping and detaining children without, in particular Andrew Decter, Shepherd is committing illegal and fraudulent acts.

122. Additionally, Shepherd, and others employed or acting on behalf of the defendants were aware of the Supreme Court Order which demanded that Kenneth have phone call and visitation rights with the infant plaintiff. Shepherd and/or other employees of the defendants herein were sent and received correspondence which notified them of the New York State Supreme Court Order, yet they repeatedly purposefully disobeyed that Supreme Court Order to carry on their illegal activity.

123. Shepherd, because of his illegal acts, is not afforded the protection of incorporation and is thus individually liable for all acts of the defendants Skezics and Right Direction.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully demand:

1. That this Court grant judgment in favor of the plaintiffs and against the defendants on all causes of action asserted herein;

2. That this Court award Plaintiffs those damages which it may appear they are entitled to by the proof submitted in these causes of action for their physical injuries, emotional injuries, financial injuries, loss of liberty, for their past and future pain and suffering and for their out of pocket expenses including medical and attorney's fees;

3. That this Court award the Plaintiffs punitive damages against the Defendants for the Defendants illegal, inhumane and unjustifiable actions;

4. That this Court award the Plaintiffs reasonable expenses incurred in this litigation;

5. That this Court award Plaintiffs any other further and general relief which it may appear they are entitled;

6. A jury for the trial of this matter; and

7. For such other and further relief as this Court deems just and necessary.

Dated: May 30, 2013
Mineola, New York

Respectfully submitted,
Kilgannon & Kilgannon, LLP

By:_____S/_____
       Timothy Kilgannon, Esq.

Attorneys for Plaintiffs
1551 Kellum Place
Mineola, New York 11501
(516) 746-5530